UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| TOUBA BIGLARI, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 4:07CV562 HEA |
| ) | (TIA) |
| MICHAEL J. ASTRUE, ) | |
| COMMISSIONER OF SOCIAL SECURITY, ) | |
| ) | |
| Defendant. ) | |

## **REPORT AND RECOMMENDATION**

This matter is before the Court under 42 U.S.C. § 1383(c)(3) for judicial review of the denial of Plaintiff's application for Supplemental Security Income under Title XVI of the Social Security Act. The case was referred to the undersigned pursuant to 28 U.S.C. § 636(b).

### **Procedural History**

On July 8, 2003, Plaintiff filed an application for Supplemental Security Income, alleging disability since February 4, 1977, due to asthma, osteoarthritis, and allied disorders. (Tr. 19-20, 49-51) The application was denied, after which Plaintiff requested a hearing before an Administrative Law Judge (ALJ). (Tr. 19-20, 40-44) On May 11, 2006, Plaintiff appeared at a hearing before the ALJ. (Tr. 176-198) On November 15, 2006, the ALJ issued a decision concluding that Plaintiff was not under a disability as defined by the Social Security Act at any time since July 8, 2003, the date she filed her application. (Tr. 12-18) The Appeals Council denied Plaintiff's request for review on February 1, 2007. (Tr. 3-5) Thus, the determination of the ALJ stands as the final decision of the Commissioner.

## **Evidence Before the ALJ**

At the hearing before the ALJ, Plaintiff was represented by counsel. Plaintiff testified, with the aid of an Interpreter, Mohammed Baban. Vocational Expert Brenda Young also testified at the hearing. (Tr. 176) Plaintiff testified that she was born on February 4, 1972 and was 34 years-old. She was originally from Iran and spoke Kurdish. Plaintiff completed six or seven years of school in Iran. While she could read her own language, she only spoke a little English. (Tr. 179)

Plaintiff testified that she came to the United States from Iraq in 2003 because of the fighting between Iraq and Iran. Plaintiff stated that she experience problems with her chest and legs before arriving in the United States. She had difficulty breathing and used an inhaler. In addition she could not go upstairs or walk because of pain in both legs from the knee down. (Tr. 180)

Since Plaintiff arrived in the United States, she stated that she had a lot of problems. Plaintiff testified to taking a lot of medication that did not help. In addition, she experienced problems with her shoulder, chest, and legs. Plaintiff testified that the shoulder problems were related to the chest and knee pain. Plaintiff had been hospitalized in Iraq, but not in the United States. Plaintiff did spend one night in the emergency room for shoulder and leg pain. According to the Plaintiff, the physicians told her that she had nerve problems and depression. Although she took medication for her depression, Plaintiff reported that the medication did not help. With regard to her breathing problems, Plaintiff testified that breathing in steam helped more than her inhaler, which she had to use 15 or 16 times daily. (Tr. 180-182)

Plaintiff further testified that she was married with two children, ages seven and nine. Her husband was unemployed. He engaged in a "sports kind of business" in Iran or Iraq, and he worked for a year-and-a-half as a cleaner in the United States. Plaintiff stated that during the day, she cooked

but was unable to clean because of the dust. Plaintiff was able to be on her feet for a short time to cook meals. Although she went grocery shopping, her husband accompanied her because she was unable to lift things. Plaintiff reported that the heaviest items she could lift were a small plate of food or a cup of coffee. Plaintiff testified that she could not lift more than two kilograms. While grocery shopping with her husband, Plaintiff had to sit down. Plaintiff believed she could be on her feet no more than 15 minutes at a time. (Tr. 182-184)

Vocational Expert (VE) Brenda Young also testified at the hearing. The ALJ posed the following hypothetical:

> If I were to find that Ms. Biglari was, was restricted to light work in that she could be on her feet the better part of the workday, standing and walking, could lift 20 pounds occasionally, ten pounds frequently, but had to work in environments that were free of dust, fumes[.] … But she doesn't speak English, doesn't read English, … Are there jobs that could be done?

(Tr. 184-185) The VE answered that there were assembly jobs in the St. Louis area, approximating 5,000 in the light work category and 2,000 in the sedentary category. In addition, there were dining room helper positions, along with unskilled cleaning or food preparation. However, the VE further testified that jobs in cleaning areas would be eliminated due to fumes and dust. The VE stated that the jobs she described were usually entry level service jobs that did not require a lot of interaction, so a lack of English speaking ability would not be a problem. (Tr. 184-187)

Plaintiff's attorney also examined the VE. The attorney altered the hypothetical to provide a lifting limitation from 10 pounds occasionally to 2 kilograms occasionally. The VE stated that this new limitation would eliminate the light work such as light assembly and dining room helper positions and would leave the sedentary assembly jobs. The VE reiterated that 2,000 such positions existed.

3

If the VE assumed that Plaintiff had to sit down for a few minutes every quarter hour, Plaintiff would still be able to perform sedentary jobs. However, if the VE factored in depression, to the extent that Plaintiff missed work more than two days a month, it could eliminate full-time work. (Tr. 187-188)

Upon re-examination by the ALJ, the VE stated that if Plaintiff's depression caused problems with focusing or problems due to the medication, Plaintiff could experience difficulty with assembly jobs which have production expectations. However, those jobs did not require a lot of focus. (Tr. 188)

After the VE completed her testimony, Plaintiff's attorney examined Plaintiff, who testified that she resided in South St. Louis. She did not know her height, but Plaintiff weighed 175 or 180. Plaintiff further testified that she use an inhaler, which caused problems in her throat if she used it more than normal. Plaintiff explained that her throat felt blocked. With regard to taking Paxil for depression, Plaintiff stated that it did not help, and it caused some dizziness. In addition, Plaintiff testified that the Prednisone did not help her and also caused dizziness. (Tr. 189-190)

Plaintiff worked part-time in a school cafeteria. She only worked four hours a day. She turned down an offer to work more hours a day because she cannot stand on her feet that long, and her chest hurts. Plaintiff further testified that other workers made accommodations for her throughout her shift. For instance, Plaintiff's co-workers lift the heavy things and put them on her cart. Plaintiff described her position as preparing food in the cafeteria. She covered her mouth because of her breathing problems. After preparing the food, Plaintiff put it on the table for the students. Plaintiff stated that the plates were light-weight. She transported the plates on a small cart. Plaintiff worked from 8:30 a.m. to 12:15 p.m. and received six dollars an hour. However, Plaintiff testified that she missed work because of chest pain. During the winter when the weather was cold,

Plaintiff stated that it took her a month to recover from an illness. However, Plaintiff continued to go to work because she needed the money to pay bills and rent. She only worked during the school year, not the summer. Either Plaintiff's husband drove her to and from work, or she drove herself. Plaintiff testified that she took naps when she returned home from work. (Tr. 191-193)

Plaintiff further testified that she could only go up stairs one time because of pain in her legs and difficulty breathing. Plaintiff believed she could only walk a minute before needing to stop due to pain and breathing difficulties. She did not go out socially, belong to any organizations, or attend religious services. Plaintiff stated that when she felt sad, she felt like her whole body was shut down. In addition, she had pain in her shoulders. Plaintiff testified that she missed work once or twice a month due to depression. Plaintiff saw a doctor two or three times a month. She had one doctor for her foot and another doctor for her chest. Plaintiff stated that she could use the telephone and that she called her family once a month. (Tr. 193-196)

Plaintiff could not use ladders due to breathing problems, and she became dizzy when lifting and moving things. Her cafeteria work did not require much communication, so she was able to understand and carry out instruction. Plaintiff testified that she previously lived in Turkey, where she was hospitalized and received medication. She stated that she has experienced breathing problems for 25 years. Plaintiff had an I-94 (refugee) card, and her children had green cards. Plaintiff planned to learn English when she felt better and did not have problems with depression. She watched television, which helped a little with learning English. (Tr. 196-197)

**Medical Evidence**

5

In June and July of 2003, Dr. Nasir Rasheed examined Plaintiff for complaints of lung problems, pain in both legs from the shins down, and pain and numbness in both arms. The examinations were unremarkable, except for some wheezing and rhonchi in her lungs. Laboratory tests were normal, and Dr. Rasheed assessed Asthma and Arthritis and prescribed an inhaler, Ibuprofen, Singulair, and Naproxen. (Tr. 102-111)

On August 26, 2003, Plaintiff reported to Ling Xu, M.D., for a neurological evaluation.[1] Plaintiff reported chronic leg pain, with an new onset of right upper extremity pain. Plaintiff reported going the Emergency Room in July due to fainting and confusion spells. Additionally, Plaintiff reported personal and sleep problems, for which a psychiatrist prescribed Paxil. The examination revealed stable vital signs with no signs of any acute distress. Mental status, cranial nerve examination, and motor examination were normal. Plaintiff felt no muscle tenderness with palpation, and she reported feeling better after muscle palpation to her legs. Plaintiff exhibited no significant sensory loss in four extremities; and her reflexes, gait, and coordination were normal. Dr. Xu diagnosed myalgia. Plaintiff followed up with Dr. Xu in October and November of 2003. Dr. Xu again assessed myalgia, noting that all laboratory tests were normal. Dr. Xu recommended that Plaintiff consult rheumatology. (Tr. 76-79)

According to the medical records, Plaintiff did not seek further medical attention until 2006. From approximately April 2006 until November 2006, Plaintiff reported to the BJC clinic for general

---

[1] In a Medical Review of Systems, Plaintiff self-reported that she suffered from paralysis/weakness of arms and legs; persistent numbness or tingling; asthma; shortness of breath; chronic cough; arthritis/rheumatism; chronic muscle ache (myalgia); fatigue easily; pain or tender scalp; anemia; leukemia; bleeding tendency; constipation; difficulty swallowing; ulcer (peptic); severe depression; severe mood swings; medication for depression/anxiety; and treatment for psychiatric disorder. (Tr. 90-91)

6

health care. Plaintiff complained of chronic chest pain, knee pain, depression, and shoulder pain. She rated her chest pain as an 8 out of 10. Plaintiff was also seen for ob/gyn care. She reported shortness of breath after walking a half block and a burning sensation in her lungs when she stopped walking. Plaintiff also described pain in her legs with walking and resting. Her mood was okay, and she stated that she occasionally took her prescribed Paxil. Plaintiff mentioned that her disability application was denied, and she requested that the physician send more information to the disability office. A CT scan of Plaintiff's chest on April 28, 2006 revealed moderate bronchiectasis[2], predominantly in the right lower lobe and right middle lobe, which was improved and clearing in a November 2006 scan. Pulmonary function tests in November 2006 also showed significant improvement of mild obstructive defect demonstrated previously in the year. Otherwise, Plaintiff's examinations were essentially normal. The examining physician noted that extensive evaluation had been unrevealing and that the cause of her leg pain was unclear and elusive. (Tr. 124-170)

### **The ALJ's Determination**

In a decision dated November 15, 2006, the ALJ determined that Plaintiff was not disabled under the Social Security Act. The ALJ found that Plaintiff had not engaged in substantial gainful employment since February 4, 1977, the alleged onset date, and she had not been employed since the protective filing date of July 8, 2003. Plaintiff had a severe combination of impairments which included complaints of leg pain and shortness of breath. The ALJ noted that, although Plaintiff had

---

[2] Stedman's Medical Dictionary defines bronchiectasis as a "[c]hronic dilation of bronchi or bronchioles as a sequel of inflammatory disease or obstruction often associated with heavy sputum production." Stedman's Medical Dictionary at 55940 (27th ed. 2000).

a prescription for the antidepressant Paxil, the medical records did not document any ongoing mental health treatment or objective medical observations pertaining to Plaintiff's mental health. Because the record was void of any indication that Plaintiff suffered from debilitating depressive symptoms despite treatment with Paxil, the ALJ found Plaintiff's depression to be "non-severe". (Tr. 14, 18)

The ALJ further determined that Plaintiff did not have an impairment or combination thereof that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. Instead, the ALJ found that Plaintiff possessed the residual functional capacity (RFC) to perform the requirements of work that involves lifting no more than 20 pounds at a time and 10 pounds frequently; standing at least 6 hours and sitting for at least 6 hours in normal 8-hour workday; and working in a clean air environment. The ALJ stated that, while Plaintiff's medically determinable impairment could produce some symptoms, Plaintiff's statements regarding the intensity, persistence, and limiting effect of these symptoms was not entirely credible. For instance, the ALJ found no objective or clinical findings to support Plaintiff's allegations of respiratory problems. Although Plaintiff was prescribed an inhaler, no chest x-rays or pulmonary function tests documented a lung impairment. Further, Plaintiff did not require frequent emergency room visits or in-patient treatment for her alleged breathing disorder. In addition, the record contained no diagnosis related to her alleged leg pain, and she merely took Ibuprofen for the pain. Neurological examinations and laboratory test results were normal. The ALJ concluded that the record was "totally devoid of any objective or other accepted clinical findings supporting the claimant's allegation of debilitating leg pain." Further, Plaintiff's ability to engage in part-time employment severely eroded her credibility regarding leg pain. Although the ALJ found that Plaintiff's allegations regarding the degree of leg pain and shortness of breath were questionable, the ALJ limited her work activities to the "light"

exertional category in a clean atmosphere. (Tr. 15-16)

The ALJ noted that Plaintiff had no past relevant work, was defined as a younger individual, and was illiterate and unable to communicate in English. In light of her age, education, work experience, and RFC, the ALJ determined that jobs existed in significant numbers in the national economy which Plaintiff could perform. Because Plaintiff required a clean work atmosphere, the ALJ relied on the VE to determine that Plaintiff could perform such jobs as an assembly worker at the light level; an assembly worker at the sedentary level; and a dining room helper. Thus, the ALJ concluded that Plaintiff had not been under a disability as defined by the Social Security Act since July 8, 2003, the date she filed her application. (Tr. 16-18))

**Legal Standards**

A claimant for social security disability benefits must demonstrate that he or she suffers from a physical or mental disability. 42 U.S.C. § 423(a)(1). The Social Security Act defines disability as "the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period not less than 12 months." 20 C.F.R. § 404.1505(a).

To determine whether a claimant is disabled, the Commissioner engages in a five step evaluation process. See 20 C.F.R. § 404.1520(b)-(f). Those steps require a claimant to show: (1) that plaintiff is not engaged in substantial gainful activity; (2) that she has a severe impairment or combination of impairments which significantly limits her physical or mental ability to do basic work activities; or (3) she has an impairment which meets or exceeds one of the impairments listed

in 20 C.F.R., Subpart P, Appendix 1; (4) she is unable to return to her past relevant work; and (5) her impairments prevent her from doing any other work. Id.

The Court must affirm the decision of the ALJ if it is supported by substantial evidence. 42 U.S.C. § 405(g). "Substantial evidence 'is less than a preponderance, but enough so that a reasonable mind might find it adequate to support the conclusion.'" Cruse v. Chater, 85 F. 3d 1320, 1323 (8th Cir. 1996) (quoting Oberst v. Shalala, 2 F.3d 249, 250 (8th Cir. 1993)). The Court does not re-weigh the evidence or review the record de novo. Id. at 1328 (citing Robinson v. Sullivan, 956 F.2d 836, 838 (8th Cir. 1992)). Instead, even if it is possible to draw two different conclusions from the evidence, the Court must affirm the Commissioner's decision if it is supported by substantial evidence. Id. at 1320; Clark v. Chater, 75 F.3d 414, 416-17 (8th Cir. 1996).

To determine whether the Commissioner's final decision is supported by substantial evidence, the Court must review the administrative record as a whole and consider: (1) the credibility findings made by the ALJ; (2) the plaintiff's vocational factors; (3) the medical evidence from treating and consulting physicians; (4) the plaintiff's subjective complaints regarding exertional and non-exertional activities and impairments; (5) any corroboration by third parties of the plaintiff's impairments; and (6) the testimony of vocational experts when required which is based upon a proper hypothetical question that sets forth the plaintiff's impairment(s). Stewart v. Secretary of Health & Human Servs., 957 F.2d 581, 585-586 (8th Cir. 1992); Brand v. Secretary of Health Educ. & Welfare, 623 F.2d 523, 527 (8th Cir. 1980).

The ALJ may discount plaintiff's subjective complaints if they are inconsistent with the evidence as a whole, but the law requires the ALJ to make express credibility determinations and set forth the inconsistencies in the record. Marciniak v. Shalala, 49 F.3d 1350, 1354 (8th Cir. 1995). It

is not enough that the record contain inconsistencies; the ALJ must specifically demonstrate that he or she considered all the evidence. Id. at 1354; Ricketts v. Secretary of Health & Human Servs., 902 F.2d 661, 664 (8th Cir. 1990).

When a plaintiff claims that the ALJ failed to properly consider subjective complaints, the duty of the Court is to ascertain whether the ALJ considered all of the evidence relevant to plaintiff's complaints under the Polaski[3] standards and whether the evidence so contradicts plaintiff's subjective complaints that the ALJ could discount her testimony as not credible. Benskin v. Bowen, 830 F.2d 878, 882 (8th Cir. 1987). If inconsistencies in the record and a lack of supporting medical evidence support the ALJ's decision, the Court will not reverse the decision simply because some evidence may support the opposite conclusion. Marciniak 49 F.3d at 1354.

## Discussion

The Plaintiff first argues that the ALJ erred by failing to view the uncontradicted medical evidence in the light most favorable to Plaintiff. Plaintiff also contends that the ALJ erred by improperly utilizing the hypothetical question to the VE in determining that Plaintiff was not disabled. Finally, the Plaintiff asserts that the ALJ erred by not ordering an additional psychological evaluation of Plaintiff and instead substituted his own findings in place of medical doctors. The Defendant, on the other hand, contends that the ALJ properly evaluated Plaintiff's impairments; properly assessed Plaintiff's credibility; and properly formulated Plaintiff's RFC to find that Plaintiff

---

[3]The Polaski factors include: (1) the objective medical evidence; (2) the subjective evidence of pain; (3) any precipitating or aggravating factors; (4) the claimant's daily activities; (5) the effects of any medication; and (6) the claimants functional restrictions. Polaski v. Heckler, 739 F.2d 1320, 1322 (8th Cir. 1984).

could perform work that existed in the national economy. Thus, the Defendant maintains that substantial evidence supports the ALJ's determination that Plaintiff was not disabled.

The undersigned agrees that substantial evidence supports the ALJ's determination. First, the ALJ properly assessed the medical evidence in this case. The objective medical evidence, while perhaps uncontroverted, did not support the plaintiff's allegations of disabling pain and respiratory problems. The ALJ specifically found that plaintiff suffered from complaints of leg pain and shortness of breath. However, the medical evidence consistently demonstrated normal neurological tests and only mild to moderate bronchiectasis. The most recent pulmonary function tests and CT scans indicated that Plaintiff's bronchiectasis was improving. (Tr. 140) Additionally, the examining physician noted that the cause of Plaintiff's leg pain was unclear, as there were no neurological findings on examination. (Tr. 140) The lack of objective medical evidence demonstrating disabling pain and respiratory problems supports the ALJ's determination that Plaintiff is not disabled. See Choate v. Barnhart, 457 F.3d 865, 871 (8th Cir. 2006) (discounting Plaintiff's allegations of disability where unsupported by medical evidence and other evidence in the record).

In addition, Plaintiff did not frequently seek medical treatment for her alleged impairments after the alleged onset date. The record indicates that Plaintiff saw Dr. Xu in 2003. Plaintiff did not seek further medical attention until 2006, despite her allegations that she suffered from debilitating pain and respiratory problems. Failure to seek medical assistance for alleged physical impairments contradicts Plaintiff's subjective complaints of disability and supports the ALJ's decision to deny disability benefits. Gwathney v. Chater, 104 F.3d 1043, 1045 (8th Cir. 1997).

The undersigned also finds that the ALJ posed a proper hypothetical to the VE and relied on the VE's testimony to determine that Plaintiff was not disabled. Plaintiff asserts that the ALJ's

hypothetical was incomplete in that it failed to include any mention of Plaintiff's depression. However, while the hypothetical must accurately set forth the plaintiff's impairments, it need only incorporate those impairments and limitations that the ALJ finds credible. Pertuis v. Apfel, 152 F.3d 1006, 1007 (8th Cir. 1998).

In this case, the ALJ noted that there was no evidence of depression contained in the record, other than a prescription for Paxil. In addition, the record shows that Plaintiff did not take her anti-depressant medication on a consistent basis. Further, the ALJ properly noted that Plaintiff failed to seek any psychiatric treatment. Indeed, the record was void of any objective medical observations regarding Plaintiff's mental health. See Roberts v. Apfel, 222 F.3d 466, 469 (8th Cir. 2000) ("[t]he absence of any evidence of ongoing counseling or psychiatric treatment or of deterioration or change in [plaintiff's] mental capabilities disfavors a finding of disability"). As such, there was no supporting evidence that Plaintiff's alleged depression would impact her ability to work, and the ALJ properly excluded depression from the hypothetical. See Pearsall v. Massanari, 274 F.3d 1211, 1220 (8th Cir. 2001) (finding that the hypothetical question properly included all impairments accepted by the ALJ as true and excluded other alleged impairments that the ALJ had reason to discredit). Based on this proper hypothetical, the VE testified and the ALJ determined that Plaintiff was able to work certain light and sedentary jobs which existed in significant numbers in the national economy.

Finally, the Plaintiff argues that the ALJ erred by failing to order an additional psychological evaluation of Plaintiff and instead substituted his own findings in place of medical doctors. The undersigned disagrees. Although the ALJ has a duty to fully and fairly develop the record, the ALJ is required to do so only where the medical evidence is insufficient to determine whether the Plaintiff is disabled. Barrett v. Shalala, 38 F.3d 1019, 1023 (8th Cir. 1994). Here, a physician merely

prescribed an anti-depressant. Plaintiff did not seek any ongoing psychological treatment, and she took her medication on an inconsistent basis. Further, Plaintiff did not allege depression as a disability in her application, questionnaire, or Disability Report. (Tr. 41, 56, 68) This is insufficient evidence to require the ALJ to order a psychological evaluation. See Hensley v. Barnhart, 352 F.3d 353, 357 (8th Cir. 2003) (because plaintiff did not allege disability based on depression; did not seek and was not referred for professional mental health treatment; and was only prescribed antidepressants, the ALJ was not required to inquire further into plaintiff's condition by ordering a psychological examination). Therefore, the ALJ properly evaluated Plaintiff's alleged mental impairment and did not need to order further psychological testing. As a result, substantial evidence based on the record as a whole supports the ALJ's determination that Plaintiff is not disabled.

Accordingly,

**IT IS HEREBY RECOMMENDED** that the final decision of the Commissioner denying social security benefits be **AFFIRMED**.

The parties are advised that they have eleven (11) days in which to file written objections to this Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1), unless an extension of time for good cause is obtained, and that failure to file timely objections may result in a waiver of the right to appeal questions of fact. See Thompson v. Nix, 897 F.2d 356 (8th Cir. 1990).

/s/ Terry I. Adelman
UNITED STATES MAGISTRATE JUDGE

Dated this 6th day of March, 2008.